UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JAMES P. LAKE,**

    **Plaintiff,**

vs.                                                    Case No. 8:07-cv-1115-T-17MSS

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying claims for continuance of childhood disability benefits under the Act.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge, the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I.  BACKGROUND**

    **A.  Procedural History**

Ms. Mildred Lake, on behalf of her son James P. Lake (hereinafter "Plaintiff"), filed an application for Childhood Disability Benefits on July 6, 1992.  (Tr. 11)  Beginning January 1,

---

[1] The District Court has referred this matter to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(c), Fed. R. Civ. P. 72 and Local Rules 6.01(a), (b) and 6.02(a), M.D. Fla.

1

1992, Plaintiff was determined to be disabled and awarded benefits based on psychiatric listing 12.03 (schizophrenia).  Id.  On March 4, 2003, Plaintiff was notified that based on a continuing disability review, it was determined that drug and alcoholism had become a contributing factor to his disability, and, as such, his eligibility for disability benefits had ceased.  (Tr. 53-57)   Plaintiff requested reconsideration and the cessation of disability benefits was affirmed administratively by a disability hearing officer. (Tr. 39-50)  Plaintiff requested a Hearing which was held on October 4, 2005, before Administrative Law Judge Dores D. McDonnell, Sr. (hereinafter referred to as the "ALJ").  (Tr. 21-25, 266-86)  In a decision dated February 23, 2006, the ALJ issued a Decision finding that Plaintiff's disability and Childhood Disability Benefits ended effective March 1, 2003.  (Tr. 11-20)  The Appeals Council denied review of the decision on May 15, 2007.  (Tr. 3-5)  This action for judicial review ensued.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision.  By way of summary, Plaintiff was a twenty year old individual with a tenth-grade education at his date last insured. (Tr. 12, 18)  On the date of the Hearing before the ALJ, Plaintiff was thirty-three years old. (Tr. 272)  Plaintiff complained that he was disabled beginning on January 1, 1992, due to schizophrenia, personality disorder, and depression.  (Tr. 15)

After reviewing the evidence of record and Plaintiff's subjective testimony, the ALJ found that Plaintiff had experienced medical improvement in his impairments since his most recent favorable decision on May 12, 1999, and that the improvement was related to his ability to work. (Tr. 19) The ALJ determined that Plaintiff had severe impairments consisting of attention deficit/hyperactivity disorder, depression, schizophrenia, and

substance abuse addiction disorder (alcohol, marijuana, and cocaine, currently in remission). (Tr. 16) The ALJ concluded that as of March 2003, if Plaintiff stopped using drugs and/or alcohol and was compliant with prescribed treatment, he would not be disabled. (Tr. 18) Accordingly, the ALJ found that Plaintiff's substance abuse was a contributing factor material to the finding of disability. (Tr. 16) The ALJ then considered Plaintiff's other impairments, independent of his drug and alcohol abuse, and determined that he had no physical limitations and, thus, from a physical standpoint could perform a full range of medium and heavy work. (Tr. 19) The ALJ concluded, however, that Plaintiff's mental impairments limited him to simple, repetitive, and unskilled tasks. (Tr. 17, 19) The ALJ found that there was medical improvement related to Plaintiff's mental condition compared to the last period of disability and that, as such, as of March 1, 2003, his impairments, considered apart from his substance abuse, did not preclude him from performing his past relevant work as a tree and lawn service laborer. (Tr. 18-20) Accordingly, the ALJ determined that Plaintiff's disability had ceased as of March 1, 2003. (Tr. 18, 20)

Plaintiff alleges two points of error in the ALJ's decision which he contends warrant a reversal of this decision and a remand of the case for payment of benefits: (1) the ALJ erred by concluding that Plaintiff had medical improvements in his prior diagnosis, and (2) the ALJ erred by determining that alcohol and drug use addiction were contributing factors to his claimed disability. For the reasons that follow, the Undersigned **REPORTS AND RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

## II.    STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the

Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g)(2007). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

### III. DISCUSSION

#### A. WHETHER THE ALJ ERRED BY CONCLUDING THAT PLAINTIFF HAD MEDICAL IMPROVEMENTS IN HIS PRIOR DIAGNOSIS

Plaintiff contends that the ALJ erred by concluding that he had medically improved. A claimant bears the burden of providing evidence that he is disabled within the meaning of the Social Security Act. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). In a cessation of benefits case, the issue is whether substantial evidence shows that the claimant's impairment(s) medically improved to the point that he is able to perform

substantial gainful activity. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). A claimant previously found disabled is not entitled to a presumption of continuing disability. See 42 U.S.C. § 423(f). Medical improvement is defined as any decrease in the medical severity of the claimant's impairment(s) based on changes in the symptoms, signs, and/or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 404.1594(b)(1), (c)(1); see also 20 C.F.R. § 404.1528 (defining symptoms, signs, and laboratory findings). If the claimant has experienced medical improvement, the ALJ must determine if the medical improvement relates to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4).

Generally, medical improvement relates to a claimant's ability to work if the claimant has had a decrease in the severity of his impairment(s) and an increase in his residual functional capacity ("RFC"). 20 C.F.R. § 404.1594(b)(3), (c)(2). If the prior finding of disability was based on the claimant's impairment(s) meeting or equaling a listed impairment, the claimant's RFC would not have been assessed. 20 C.F.R. § 404.1594(c)(3)(i). Under such circumstances, a finding that the claimant's medical improvement relates to his ability to work would be made if the claimant's impairment(s) no longer meets or equals the same listing. Id. If medical improvement is established and is related to the claimant's ability to work, the ALJ will decide if the claimant's current impairment(s) is severe. 20 C.F.R. § 404.1594(f)(6). The ALJ then will assess the claimant's current RFC and determine if the claimant can do his past relevant work or other work. 20 C.F.R. § 404.1594(f)(7), (8).

Viewed against the legal standard, the Undersigned finds that the ALJ properly determined that Plaintiff experienced medical improvement in his impairments since May 1999, the date of the most recent favorable determination and that the improvement was related to his ability to work. (Tr. 19) First, the ALJ compared Plaintiff's last favorable

determination of disability with the new medical evidence. While Plaintiff had previously been found to meet Listing 12.03 for schizophrenia, the ALJ appropriately found that Plaintiff's impairments no longer met or equaled any listed impairment. (Tr. 11, 16)

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted). Plaintiff has not shown that he continues to meet Listing 12.03, which requires evidence of persistent delusions or hallucinations; catatonic or other grossly disorganized behavior; or incoherence, loosening of associations, illogical thinking, or poverty of content of speech resulting in marked limitations of activities of daily living, or difficulties in maintaining social functioning, concentration, persistence, or pace; or chronic schizophrenic, paranoid or other psychotic disorder resulting in repeated, extended episodes of decompensation, decompensation caused by even a minimal increase in mental demands, or inability to function outside a highly supportive living arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.

 Since May 1999, Plaintiff's medical sources have primarily diagnosed him with alcohol and drug dependence, adjustment disorder with depressed mood, major depression, and antisocial personality with borderline features. (Tr. 125, 175, 184, 193, 198, 199, 202, 205) While Plaintiff's treating psychiatrist, Dr. Hafiz Rahman prescribed various medications, there is no medical record of a diagnosis of schizophrenia. Nor did Dr. Rahman document any associated limitations related to a "Listing" type diagnosis. Consultative psychologist Dr. Thomas Trimmer provided an Axis II diagnosis of personality disorder with borderline, "schizotypal," and antisocial features, but he did not include an Axis I diagnosis of

6

schizophrenia. (Tr. 205) Plaintiff's own consultative psychologist, Dr. Steven Wu reported that he could not confirm a diagnosis of schizophrenia or major depression because Plaintiff invalidated his MMPI test due to "gross exaggerating and yeah saying." (Tr. 257) Dr. Wu further stated that "what confounds the various diagnoses is his history of substance abuse, which can mimic or cause Major Depression, Schizophrenia, paranoia, and mania, particularly due to LSD and crack cocaine. At most, I would diagnose Psychotic Disorder NOS, because he doesn't seem to fit the picture of schizophrenia, and because the hallucinations and ideas of reference may be residuals from substance abuse." (Tr. 257) The record otherwise shows that Plaintiff improved medically and his disability ceased as of March 1, 2003.

Plaintiff asserts that such no improvement occurred as evidenced by the treatment notes of Dr. Rahman reflecting that Plaintiff continued to have hallucinations, depression, and paranoia despite medications and refraining from substance abuse. (Dkt. 11 p. 8) However, on several occasions, Dr. Rahman noted that Plaintiff's symptoms occurred after he did not take his prescribed medications. (Tr. 244, 245, 247, 252) On several other occasions, Dr. Rahman reported that Plaintiff was "doing ok" and "not depressed." (Tr. 244-46) Further, Dr. Rahman did not indicate that Plaintiff had significant functional limitations or otherwise indicate that he had disabling limitations. Contrary to Plaintiff's assertion, the evidence from Dr. Rahman does not establish that there had been no medical improvement.

Medical improvement is also shown in the findings of the two consultative psychologists, Dr. Trimmer and Dr. Wu. Dr. Trimmer reported that Plaintiff's speech was normal, he was oriented to person, place, and time, and that there were no abnormalities in thought content or thought process. (Tr. 204-05) Similarly, Dr. Wu reported that Plaintiff's

speech was fluent and understandable, his behavior was appropriate, his recent and remote memory appeared intact, his thought content was reality based, and his thought process was clear, coherent, organized, and goal-directed. (Tr. 255) Furthermore, Plaintiff told Dr. Trimmer and Dr. Wu that he enjoyed various activities, including fishing, biking, gardening, spending time with friends, reading, and watching television. (Tr. 205, 255)

Plaintiff points out that Dr. Trimmer assigned a GAF score of 50, an indication of "serious" symptoms. (Dkt. 1 p. 7-8) Dr. Trimmer's GAF rating was only one part of his evaluation. As noted above, Dr. Trimmer reported that Plaintiff's speech was normal, that he was oriented to person, place, and time, that there were no abnormalities in thought content or thought process, and that his behavior was appropriate. (Tr. 204) Moreover, GAF scores of 65, an indication of "mild" symptoms, were assigned by his treating sources at the Florida Center for Addictions and Dual Disorders and by his own consultative psychologist, Dr. Wu. (Tr. 184, 257) In April 2002, treating psychiatrist Dr. David Panting estimated that Plaintiff's highest GAF in the past year had been 70. (Tr. 175) Dr. Rahman, Plaintiff's most recent treating psychiatrist, assigned a GAF rating of 55, an indication of no more than "moderate" symptoms. (Tr. 250) Plaintiff fails to show that Dr. Trimmer's GAF rating of 50 at the time of his evaluation establishes that he continued or was expected to continue for a twelve month period to have disabling mental impairments apart from substance abuse.

Plaintiff also speculates that while his impairments may have been under moderate control, "with the added stress of full time employment, [his] impairment could reasonably deteriorate." (Dkt. 11 p. 9) Plaintiff, however, cites no medical evidence to substantiate that claim. Accordingly, the Undersigned finds that the ALJ correctly determined that,

8

considering Plaintiff's other mental impairments independently from his substance abuse, there had been medical improvement related to his ability to work and Plaintiff retained the residual functional capacity to perform his past work as a tree and lawn service laborer. As such, he was not disabled.

    **B.    WHETHER THE ALJ ERRED BY DETERMINING THAT ALCOHOL AND DRUG USE ADDICTION WERE CONTRIBUTABLE FACTORS TO HIS DISABILITY**

Next, Plaintiff contends that in light of his October 2005 hearing testimony that he had not used alcohol or drugs in over two years, the ALJ erred in finding alcohol and drug abuse to be material to the finding of disability. A claimant shall not be considered to be disabled if alcoholism or drug addition is a "contributing factor to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C) (1997). The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability is whether the claimant would still be found disabled if he stopped using drugs or alcohol. Doughty v. Apfel, 245 F.3d 1274, 1279 (11th Cir. 2001); 20 C.F.R. § 404.1535(b)(1). "[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." Doughty, 245 F.3d at 1280.

The ALJ found that to the extent that Plaintiff could be said to have any disability impairments at any point after May 1999, Plaintiff's alcohol and drug abuse were material to any such finding of disability. That is to say, if he stopped using alcohol and/or drugs and was compliant with prescribed treatment, he would not be disabled. This decision too is supported by substantial evidence and consistent with the law.

As the Commissioner points out, the comparison point date in Plaintiff's case is May 1999, and the record reflects significant drug and alcohol use from that point forward.

9

Among other things, Plaintiff was hospitalized at Savannas Hospital in October 2001 for treatment for alcohol and illegal drug dependencies, with an admitting diagnosis of "[m]ental disorder, due to polysubstance dependence." (Tr. 129)  Plaintiff also was hospitalized from December 2, 2001, through January 4, 2002, at The Willough at Naples for treatment of alcohol dependence.  (Tr. 177-81)  In February 2002, Plaintiff was referred by his attorney to the Florida Center for Addictions and Dual Disorder for treatment of alcohol and drug abuse. (Tr. 173-75)  Plaintiff's chief complaint was "my alcohol."  (Tr. 173)  In April 2002, Plaintiff referred himself to the Florida Center for treatment of alcohol dependence and major depression, reporting that he had been drinking up to a 12-pack of beer per day and that he was also using "crack cocaine" daily.  (Tr. 176)  The record also shows that Plaintiff told consultative psychologist Dr. Thomas Trimmer in February 2003 that he had been abusing beer and wine and using "crack cocaine" about twice a month.  (Tr. 204-05)

The ALJ acknowledged at the time of his decision on February 23, 2006, that Plaintiff's alcohol and drug abuse were "currently in remission." (Tr. 16)  However, as discussed above, the record documents significant substance abuse during the relevant period, i.e. the comparison point date in May 1999 forward.  Finally, as noted by the ALJ, the state agency psychologist later opined that during periods of sobriety, Plaintiff's other mental impairments imposed only mild restrictions with activities of daily living and maintaining social functioning, and moderate difficulties in sustained concentration, persistence, or pace. (Tr. 17, 236)

In light of the above, the Undersigned finds that the ALJ properly determined that Plaintiff's drug and alcohol abuse were material to any claim of disability at any time when he was abusing drugs and alcohol after the May 1999 evaluation.

## IV.   CONCLUSION

Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**. The Undersigned further **RECOMMENDS** that the **CLERK** be **DIRECTED** to enter judgment in favor of the Commissioner pursuant to Fed. R. Civ. P. 58 and **CLOSE** this case.

Respectfully **RECOMMENDED** in Tampa, Florida this 20th day of August 2008.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:
Counsel of Record
Judge Elizabeth A. Kovachevich

## NOTICE TO THE PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).